## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ADAM ARENDT,

        Plaintiff,

vs.                                                                     Civ. No. 03-1188 JCH/ACT

KEITH L. SHELEY AND STEVEN HALL,
in their individual and official capacities, and
THE CITY OF ALBUQUERQUE,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Keith L. Sheley, Steven Hall, and the City of Albuquerque's Motion for Summary Judgment, filed November 30, 2004 **[Doc. No. 50]**.  The Court, having considered the motion, briefs, and relevant law and being otherwise fully informed, finds that the motion is well taken in part and will be **GRANTED IN PART AND DENIED IN PART.**

### BACKGROUND

In the early morning on September 10, 2003, Plaintiff and his girlfriend Mariana Cruz left a bar called "Brewster's Pub," located in Albuquerque, New Mexico on Central Avenue near Fourth Street.  At Brewster's, Plaintiff ran into an acquaintance of his named "Freddie."  Plaintiff and Ms. Cruz left Brewster's at approximately 1:30 a.m. to look for a taxi.  As Plaintiff and Ms. Cruz walked north, across Central, which runs east-west, they again saw Freddie and some of Freddie's friends in front of a bar called "Maloney's."  Plaintiff and Ms. Cruz joined the group, and they all began walking west on Central.  As they were walking, Freddie informed Plaintiff that

he almost had been involved in a fight inside of Brewster's.  As the group passed the door of a bar known as "Sauce" or "Raw," Plaintiff heard yelling and cursing.  When Plaintiff turned around, he saw two men, approximately fifteen feet away, running toward him with their shirts off.

One of the shirtless men began hitting Plaintiff.  Plaintiff claims that he threw punches at his assailant in self defense, but does not believe that any of his punches connected.  The fight that ensued took place on the sidewalk and then in the street.  Approximately fifty people were on the sidewalk and in the street in the vicinity of the fight and other people exiting the bars located in the area.

At the time the fight occurred, Defendant Sergeant Hall was on foot patrol in front of 323 Central Avenue.  Defendant Hall was walking east on Central towards Brewster's when he observed two men jogging toward him while taking their shirts off.  Defendant Hall watched the two shirtless men pass him, proceed towards Plaintiff and the other members of the group, and begin to hit Plaintiff, Freddie, and another individual.  Defendant Hall sprinted towards the combatants while calling out on his radio that a fight was in progress.  Defendant Officer Sheley heard Defendant Hall's call on the radio and also proceeded towards the fight.

When Defendant Hall reached the combatants, he was the only officer on the scene.  Defendant Hall dispersed his "fogger," a cannister of mace that produces a cloud of mace useful for controlling larger groups, directly at Plaintiff and his assailants.

Defendant Hall claims that "[a]t the time he observed the fight, [he] did not know who instigated it."  Mem. in Supp. of Defs.' Mot. for Summ. J., p. 3, ¶ 15.  According to Defendant Hall, Plaintiff could have "made some kind of remark" to the men without shirts as they "jogged by."  Plaintiff argues, however, that Defendant Hall knew that Plaintiff was not the aggressor and

that Plaintiff merely was defending himself.  Defendants admit that it was one of the shirtless men

who "came at Plaintiff and began hitting him."  Mem. in Supp. of Mot. for Summ. J., p. 2, ¶ 3.  In

his police report, Defendant Hall also states that he saw Plaintiff's assailants running towards

Plaintiff as they were taking off their shirts and that he saw the two shirtless men "'start to throw

punches.'"  Resp. to Defs' Mot. for Summ. J., p. 6, ¶ 15 (quoting Albuquerque Police Dep't

Uniform Incident Rep., attached as Exh. B).

Defendant Hall claims that he shouted commands to all of the combatants to "get on the

ground," but that they refused to comply.  Plaintiff maintains that he only heard Defendant Hall

shouting, "Police, Police," after Plaintiff was sprayed with mace.  When Defendant Hall shouted,

"Police, Police," Plaintiff knew that a police officer was at the scene.  Plaintiff states that he did

not hear Defendant Hall order him to get on the ground, and that he therefore did not refuse to

comply with Defendant Hall's order.  Plaintiff also questions whether any such order was in fact

issued by Defendant Hall.

 Defendants maintain that the combatants began to scatter after Defendant Hall issued his

command for everyone to get on the ground.  Defendant Sheley arrived on the scene as the

combatants were scattering and as Defendant Hall began to pursue another combatant.  Because

he was in pursuit of another suspect, Defendant Hall did not witness Defendant Sheley apprehend

and handcuff Plaintiff.  Defendant Hall did not inform Defendant Sheley that Plaintiff was one of

the individuals involved in the fight.  According to Defendant Sheley, however, when he arrived

on the scene he saw Plaintiff running away from Defendant Hall and heard Defendant Hall telling

Plaintiff to stop.

Defendants argue that after Defendant Hall sprayed him with mace, Plaintiff turned and

-3-

moved quickly ten to fifteen yards west on the sidewalk away from Defendants Hall and Sheley.

Plaintiff disputes Defendants' description, claiming that after Defendant Hall sprayed the mace,

Plaintiff could not see and that he instinctively moved from the street to the sidewalk toward the

entrance to a bar called Anodyne, ten to fifteen feet away from the direction of the mace. Plaintiff

maintains that he stopped to regain his composure in front of the brick wall that serves as the

front exterior of Anodyne. The parties agree that Plaintiff could not see at this time and that he

was holding his arm over his eyes.

Plaintiff claims that after he had stopped moving and was facing the wall of Anodyne,

Defendant Sheley unexpectedly slammed Plaintiff into the wall from behind. A witness at the

scene also stated that Plaintiff was standing stationary trying to recover from the effects of the

mace when Defendant Sheley slammed him into the building. That same witness further stated

that Defendant Sheley pushed Plaintiff in the back "quick and hard into the building" using "his

whole body."

Defendant Sheley disputes Plaintiff's contentions, maintaining that Plaintiff was still

moving and had his arm over his eyes when he apprehended him. Defendant Sheley claims that

when he observed Plaintiff run away from Defendant Hall, he proceeded to run after Plaintiff. As

Defendant Sheley caught up to Plaintiff, Defendant Sheley "reached out with his right arm," and

not his whole body, "in an attempt to apprehend Plaintiff and connected with Plaintiff's left

shoulder area."

As a result of being slammed into the building, Plaintiff suffered multiple breaks of his

humerus bone in his upper right arm, which required surgery, as well as serious facial lacerations.

Plaintiff claims that after he hit the brick wall, he immediately knew that his arm was broken,

because he could not move it.  In addition, Plaintiff maintains that his arm was dangling, spinning around, and numb, and that he informed Defendant Sheley that his arm was broken.  According to Plaintiff, Defendant Sheley responded by telling Plaintiff to "shut up."  Plaintiff also claims that he repeatedly told officers on the scene that his arm was broken.

Defendant Sheley maintains that after apprehending Plaintiff, he instructed Plaintiff to place his hands behind his back.  When Plaintiff voluntarily complied, Defendant Sheley handcuffed him.  Plaintiff claims that he did not voluntarily place his hands behind his back, but rather that he complied to the best of his ability.  According to Plaintiff, he had difficulty following the order because Defendant Sheley had broken his arm.

Plaintiff was detained in handcuffs and forced to sit on the curb for approximately twenty to thirty minutes while Defendant Hall asked various individuals questions about the events that had transpired that night.  Plaintiff claims that Defendant Hall threatened to take Plaintiff to jail if he did not answer the questions.  During his detention, Plaintiff repeatedly continued to complain that his arm was broken.  Plaintiff maintains that Defendants refused to acknowledge his injuries, and that they did not seek medical attention for him.  When police finally released Plaintiff from handcuffs and allowed Plaintiff stand up, Plaintiff claims that he fainted, fell to the pavement, and hit his head on the ground while an officer watched.  Defendants, in contrast, claim that Plaintiff was being treated by rescue personnel when he fainted and fell to the pavement.

Plaintiff was not arrested formally in connection with this incident.

Defendant Hall is a sergeant and was the on-scene supervisor on the night of September 10, 2003.

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

The standard for analyzing a motion for summary judgment shifts slightly if, as here, a defendant raises qualified immunity as a defense in a suit under 42 U.S.C. Section 1983. Qualified immunity bars Section 1983 suits against defendants in their individual--but not official-- capacities.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted).  The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability."  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  It provides immunity from suit and not merely from liability.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It therefore spares defendants the burden of going forward with trial.  *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989)).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right."  *Garramone v.*

*Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).   When a constitutional claim of excessive force is brought against a law enforcement officer, the first part of this inquiry requires a court to determine whether the parties' submissions, viewed in the light most favorable to the plaintiff, could show the officer's conduct violated a constitutional right.  *Cf. id.* at 201.  The second part of the inquiry requires a court to "assess[] the objective legal reasonableness of the action at the time of the alleged violation and ask[] whether 'the right was sufficiently clear that a reasonable officer would understand that what he [or she was] doing violates that right.'"  *See Medina v. Cram*, 252 F.2d 1124, 1128 (10th Cir. 2001) (quotation omitted); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted).[1]

If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity.  *See Medina*, 252 F.2d at 1128.  If the nonmoving party, however, successfully demonstrates the violation of a clearly established right, the moving party assumes the normal summary judgment burden of demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity.   *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

---

[1] This second part grants officers protection beyond that afforded by a Fourth Amendment excessive force analysis on the merits.  Even if a court were to decide that the facts alleged by a plaintiff constituted excessive force, the court must nonetheless still proceed to the dispositive qualified immunity inquiry and grant immunity to the officer if a reasonable person in the officer's position would not have known that the conduct constituted excessive force.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

**DISCUSSION**

Defendants move for summary judgment on the following grounds.  First, Defendants Hall and Sheley argue that qualified immunity protects them in their individual capacities from Plaintiff's 42 U.S.C. Section 1983 claim for unlawful detention.  Second, Defendants Hall and Sheley claim that qualified immunity protects them in their individual capacities from Plaintiff's Section 1983 claim for excessive force.  Third, Defendants Hall, Sheley, and the City of Albuquerque maintain that the Court should dismiss Plaintiff's state claim for assault under the New Mexico Tort Claims Act because Plaintiff cannot establish facts that demonstrate as a matter of law that Defendants Hall or Sheley committed an assault upon him.  Fourth, Defendants Hall, Sheley, and the City of Albuquerque argue that the Court should dismiss Plaintiff's state claims under the New Mexico Tort Claims Act for assault, battery, and false arrest because Defendants Hall and Sheley acted reasonably under the circumstances and in good faith.   Finally, Defendants Hall and the City of Albuquerque argue that Plaintiff's claims for negligent supervision must fail because Defendant Sheley did not commit one of the torts enumerated in the Tort Claims Act. The Court will address each of these arguments in turn.

I.      Plaintiff's 42 U.S.C. Section 1983 Claim for Unlawful Detention.

Plaintiff alleges that Defendants Hall and Sheley detained him unlawfully in violation of the Fourth Amendment, and that he therefore is entitled to relief under 42 U.S.C. Section 1983. Section 1983 provides civil redress for deprivation of constitutional rights by persons acting under color of state law.  *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995).  Section 1983 provides in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United

-9-

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.  Section 1983 was enacted "to provide protection to those persons wronged by the misuse of power."  *Owen v. City of Independence*, 445 U.S. 622, 650 (1980) (citations omitted).

      A.    <u>Constitutional Violation</u>.

      Because Defendants in their individual capacities[2] have raised a qualified immunity defense, the Court must evaluate the merits of the defense under the modified summary judgment standard that applies to public officials who assert qualified immunity.  *See, e.g.*, *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996).  To determine whether Plaintiff has satisfied the first part of his burden under this standard by establishing a constitutional violation on the facts alleged by Plaintiff, the Court must look to the substantive law in effect at the time the conduct in question occurred.  *See Saucier v. Katz*, 533 U.S. 194, 199 (2001).

      Because "Section 1983 creates no substantive civil rights, but rather only a procedural mechanism for enforcing them," the Court's analysis must focus on the alleged violation of the Fourth Amendment.  *See Wilson*, 52 F.3d at 1552 (citation omitted); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. Amend. IV.  The seizure of a person occurs "when [an] officer by means of physical force or show of

---

    [2] Qualified immunity protects government officials sued in their individual, but not official, capacities.  *See Hafer v. Melo*, 502 U.S. 21, 24 (1991).

authority has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). In other words, a seizure has occurred when an official show of authority leads a reasonable person to believe that he or she is not free to leave or go about his or her business, ignoring the officer's presence. *See Florida v. Royer*, 460 U.S. 491, 501-02 (1983).

Under the Fourth Amendment, a police officer can stop and briefly detain a person for investigative purposes--*i.e.*, conduct an investigative detention--if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *See Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). An officer need not have probable cause to conduct an investigative detention. *See id.* In contrast, intrusions that go beyond these brief encounters--*i.e.*, arrests or *de facto* arrests--must be supported by probable cause. *See United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993).

Defendants Hall and Sheley claim that their seizure of Plaintiff was lawful because they had a reasonable and articulable suspicion that Plaintiff was engaged in criminal activity. In response, Plaintiff argues that Defendants Hall and Sheley's detention of Plaintiff amounted to a *de facto* arrest requiring probable cause. *See Michigan v. Summers*, 452 U.S. 692, 609-701 (1981) (when a detention becomes a *de facto* arrest, a showing of probable cause is required to support it). Plaintiff further argues that even if Defendants' detention of him did not amount to a *de facto* arrest, Defendants did not have a reasonable or articulable suspicion that Plaintiff was engaged in criminal activity, and that their detention of him therefore was unlawful even under the less stringent reasonable suspicion standard.

To determine whether Defendants' detention of Plaintiff was lawful, the Court first must decide whether the detention was a brief stop for investigative purposes requiring only reasonable

suspicion or whether it was a *de facto* arrest requiring probable cause.  There is no bright-line test for determining when a detention turns into a *de facto* arrest; rather, an evaluation must be guided by common sense and ordinary human experience.  *See United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994).  Therefore, the Court must weigh "both the character of the official intrusion [on the person's liberty] and its justification."  *Michigan*, 452 U.S. at 701.  An officer need not place a person formally under arrest to effect a *de facto* arrest.  *See, e.g.*, *Melendez-Garcia*, 28 F.3d at 1052 (officer's use of handcuffs and display of firearms transformed investigative detention into an arrest, even though officers did not formally arrest suspects); *United States v. Gonzalez*, 763 F.2d 1127, 1132-33 (10th Cir. 1985) (officer's request that a defendant accompany him to police station exceeded the scope of an investigative detention and became a full-fledged arrest, even though officer did not place suspect formally under arrest).

The "use of force such as handcuffs and firearms [during an investigative detention] is a far greater level of intrusion, and requires the government to demonstrate that 'the facts available to the officer would warrant a [person] of reasonable caution in the belief that the action taken was appropriate.'"  *Melendez-Garcia*, 28 F.3d at 1052 (quoting *United States v. King*, 990 F.2d 1552, 1562 (10th Cir. 1993)).  "[T]he use of firearms, handcuffs, and other forceful techniques[, however,] does not necessarily transform a[n investigative] detention into a full custodial arrest-- for which probable cause is required--[if] 'the circumstances reasonably warrant such measures.'"  *Id.* (quoting *Perdue*, 8 F.3d at 1463-64).

The Tenth Circuit has found the use of forceful techniques, such as handcuffs, reasonable during investigative detentions when the surrounding circumstances indicate that the officers' safety is at risk.  In *United States v. Merkley*, for example, the court held that the display of

-12-

firearms and use of handcuffs was reasonable when officers were informed that the suspect had threatened to kill someone and they observed the suspect violently pounding his fists on the steering wheel of his truck.  *See* 988 F.2d 1062, 1064 (10th Cir. 1993).  In *Perdue*, the Tenth Circuit held that officers acted reasonably when they ordered the occupants out of a car at gunpoint and forced them to lie on the ground because the police had information to suggest that the suspects might be armed, it was late at night in a remote area, and there were only two officers.  *See* 8 F.3d at 1458, 1464; *id.* at 1463 ("Although effectuating a Terry stop by pointing guns at a suspect may elevate a seizure to an 'arrest' in most scenarios, it was not unreasonable under these circumstances. . . . The officers had reason to be concerned for their safety[.]").  In *United States v. Merritt*, the Tenth Circuit concluded that police acted reasonably when they pointed a shotgun at the suspect because they had reason to believe that he was a murderer and heavily armed.  *See* 695 F.2d 1263, 1273-75 (10th Cir. 1982), *cert. denied*, 461 U.S. 916 (1983).

In contrast, however, the Tenth Circuit held in *Melendez-Garcia* that officers acted unreasonably when they used handcuffs on and displayed firearms to three individuals suspected of trafficking drugs as part of an investigative detention.  *See* 28 F.3d at 1052.  The court held that there was no evidence or testimony by the police that they had reason to believe these particular suspects had guns or were violent or that the circumstances of the encounter warranted the unusual intrusiveness of handcuffing the defendants during the stop.  *See id.* at 1052-53.  Because the nature of the stop exceeded an investigative detention, the Tenth Circuit held that the stop constituted a *de facto* arrest requiring probable cause.  *See id.* at 1053.

The facts as alleged by Plaintiff, which the Court must accept as true for purposes of its qualified immunity analysis, more closely resemble those in *Melendez-Garcia* than those in

-13-

*Merkley*, *Perdue*, or *Merritt*.  On these facts, neither Defendants Hall nor Sheley had reason to believe that Plaintiff had a gun or other weapon or that Plaintiff was violent.  *Cf. id.* at 1052-53.  In addition, none of the other facts as alleged by Plaintiff indicate that the encounter warranted handcuffing Plaintiff for twenty to thirty minutes during the stop.  *Cf. id.*  Furthermore, the detention in this case was particularly unreasonable because, on the facts as alleged by Plaintiff, Defendants Hall and Sheley ignored Plaintiff's pleas for medical assistance and required Plaintiff to sit in handcuffs with a broken arm for twenty to thirty minutes.  The scope of this stop exceeded that of an investigative detention, rendering it a *de facto* arrest requiring probable cause.  *Cf. id.* at 1053.

Defendants maintain that, even if the detention constituted a *de facto* arrest, they had probable cause to believe Plaintiff had committed the crimes of public affray, disorderly conduct, and resisting or obstructing an officer.  Under New Mexico law, a person is guilty of the crime of public affray when he and one or more people voluntarily or by agreement engage in any fight or use any blows or violence toward each other in an angry or quarrelsome manner in any public place to the disturbance of others.  *See* N.M. Stat. Ann. § 30-20-2.  A person has committed the crime of disorderly conduct if he engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct that tends to disturb the peace.  *See* N.M. Stat. Ann. § 30-20-1.  Finally, a person is guilty of the crime of resisting or obstructing an officer if he intentionally flees, attempts to evade, or evades an officer when he has knowledge that the officer is attempting to apprehend or arrest him.  *See* N.M. Stat. Ann. § 30-22-1(B).

"'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent

person to believe that the arrestee has committed or is committing an offense.'" *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)) (additional citations omitted); *United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir. 1991) (citation omitted), *cert. denied*, 501 U.S. 1102 (1992). "[A] court may determine whether probable cause existed at the time of the arrest by taking into account factors such as whether the officer reasonably interviewed witnesses readily available at the scene, whether he investigated basic evidence or whether he inquired if a crime had been committed at all before invoking the power of warrantless arrest and detention." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "[N]one of these factors[, however,] is dispositive or indeed necessary to the inquiry." *Id.*

Here, Defendant Hall concedes that he saw two men taking their shirts off while running toward Plaintiff. In his police report, Defendant Hall states that when the two shirtless men reached Plaintiff, they "start[ed] to throw punches at [Plaintiff]." These facts alone would not warrant a person of reasonable caution to believe that Plaintiff committed the crimes of public affray or disorderly conduct. In his deposition, Defendant Hall claims that Plaintiff could have said a comment to the shirtless men to provoke them. Such speculation by Plaintiff, however, also would not be sufficient to cause a reasonably prudent person to believe that Plaintiff voluntarily or by agreement engaged in a fight or that he possessed the requisite criminal intent to commit the crime of disorderly conduct. Without some indication that Plaintiff was the aggressor who committed some act that would justify the use of force by the shirtless men in response to Plaintiff's act, this Court cannot find on the facts alleged that a reasonably prudent officer would believe that he or she had probable cause to effect a *de facto* arrest of Plaintiff. In addition,

-15-

although these factors are not dispositive, the Court notes that Defendants Hall and Sheley did not

interview witnesses readily available at the scene or investigate basic evidence at the scene before

invoking the power of warrantless arrest and detention of Plaintiff.  *Compare Olsen*, 312 F.3d at

1312.  Rather, Defendant Sheley immediately handcuffed Plaintiff, and Defendants Hall and

Sheley kept Plaintiff in handcuffs, with a broken arm, and without medical attention, for twenty to

thirty minutes.

   Although, on the facts as alleged by Plaintiff, Defendants Hall and Sheley did not have

probable cause to believe that Plaintiff had committed the crimes of public affray or disorderly

conduct, if Defendants Hall and Sheley had probable cause to believe that Plaintiff committed the

crime of resisting or obstructing an officer, the officers lawfully could have detained Plaintiff.  At

the time Defendant Sheley used force upon Plaintiff, Plaintiff maintains that he was standing still,

facing a brick wall, and covering his eyes with his arm.  Defendants concede that after he was

sprayed with mace, Plaintiff could not see.

   Prior to that time, Plaintiff had been engaged in a fight in the street.  Defendant Sheley did

not witness Plaintiff fighting in the street, but he did observe Plaintiff moving away from the

location of the fight.[3]  Although the precise manner in which Plaintiff was moving away from the

location of the fight is in dispute, the Court for purposes of this motion must accept the facts as

---

[3] Defendant Sheley maintains that although he did not see Plaintiff engaged in the fight, he had the right to rely upon information provided to him by Defendant Hall.  *See Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995).  Although the facts in the record indicate that Defendant Hall informed Defendant Sheley of the fight by radio, the facts do not indicate that Defendant Hall informed Defendant Sheley that Plaintiff was one of the individuals involved in the fight.  In fact, in his deposition, when asked whether he gave the officers arriving at the scene any instructions, Defendant Hall did not answer in the affirmative, but rather stated that he immediately left the scene to pursue another combatant.

alleged by Plaintiff as true.  According to Plaintiff, after being sprayed with mace, Plaintiff moved

ten to fifteen feet off of the street, across the sidewalk, and toward the front brick wall of

Anodyne, where Plaintiff stopped.  Plaintiff was facing the wall and had his arm covering his eyes.

Plaintiff could not see.  Plaintiff did not hear or Defendant Hall did not issue a command to stop

moving and get on the ground.  A reasonable person would not conclude on these facts that

Plaintiff was attempting to flee the scene of the fight.

 In addition, one does not resist or obstruct an officer unless he or she intentionally flees,

attempts to evade, or evades an officer *when he has knowledge that the officer is attempting to*

*apprehend or arrest him*.  *See* N.M. Stat. Ann. § 30-22-1(B).  Here, on the facts as alleged by

Plaintiff, a reasonable person would not believe that Plaintiff had knowledge that police were

trying to arrest or apprehend him.  Based upon these facts, neither Defendants Sheley nor Hall

had probable cause to believe Plaintiff had committed or was committing the crime of resisting or

obstructing an officer.  In addition, the Court notes again that prior to placing Plaintiff in

handcuffs neither Defendants Hall nor Sheley interviewed witnesses readily available at the scene

or investigated basic evidence at the scene.  On the facts alleged by Plaintiff, Plaintiff has stated a

constitutional violation of the Fourth Amendment based upon Defendants Hall and Sheley's

unlawful detention of Plaintiff without probable cause.

 B. <u>Clearly Established</u>.

 Because the Court has held that the facts alleged by Plaintiff establish a constitutional

violation, the Court must consider next whether the right violated was a clearly established right.

*See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  "'[T]he right [Defendants are] alleged to have

violated must have been 'clearly established' in a more particularized, and hence more relevant,

-17-

sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'"  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).  Therefore, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation . . . confronted."  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  Under this test, even if a defendant were mistaken in believing . . . probable cause to arrest a plaintiff [existed], the defendant may be entitled to immunity if the mistaken belief was reasonable.  *See Holland v. Harrington*, 268 F.3d 1179, 1196 (10th Cir. 2001).  "A mistake of law may be 'reasonable' where the circumstances 'disclose substantial grounds for the officer to have concluded he [or she] had legitimate justification under the law for acting as he [or she] did.'"  *Id.* at 1196 (quoting *Saucier*, 533 U.S. at 208).  The Tenth Circuit has held that for a right to be "particularized," there "ordinarily . . . must be a Supreme Court or Tenth Circuit opinion on point."  *Garramone v. Romo*, 94 F.3d 1446, 1451 (10th Cir. 1996). That is not to say, however, that "the very action in question [must have] previously been held unlawful" for a plaintiff to defeat qualified immunity, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), but rather that in light of preexisting law, the unlawfulness was apparent.

Plaintiff has established the second part of his burden by demonstrating that the right to be free from arrest without probable cause is "clearly established" in the "more particularized sense" required by Supreme Court precedent.  *Cf. Saucier*, 533 U.S. at 202.  Specifically, the "contours of the right" to be free from excessive police force are "sufficiently clear that . . . reasonable off[icers]" in the position of Defendants Hall and Sheley would have "underst[ood] that what [they were] doing"--*i.e.*, arresting Plaintiff for the crimes of public affray without evidence that

-18-

Plaintiff voluntarily engaged in a fight, disorderly conduct without evidence that Plaintiff possessed the requisite criminal intent, and resisting or obstructing an officer without evidence that Plaintiff was fleeing the scene of the crime or that Plaintiff had knowledge that officers were attempting to apprehend him--violates that right. *See id.* (citation and internal quotations omitted). It is a well-settled and long-standing principle that arrest without probable cause violates the Fourth Amendment. *Cf. Saucier*, 533 U.S. at 208 (considering as part of its "clearly established" analysis whether the law in question was long standing). Plaintiff therefore has satisfied both the first and second parts of his burden to overcome Defendants Hall and Sheley's assertion of qualified immunity.

      C.    <u>Summary Judgment Burden</u>.

      Because Plaintiff successfully has alleged facts that demonstrate a violation of a clearly established right, Defendants Hall and Sheley must assume the normal summary judgment burden of establishing that there is no genuine issue of material fact in dispute that would defeat his claim for qualified immunity. *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied sub nom. Woodard v. Seghetti*, 509 U.S. 923 (1993). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

      The parties dispute whether Defendant Hall had knowledge of who the aggressors were that night, whether Plaintiff heard Defendant Hall order the combatants to get on the ground, and whether Plaintiff was running down the sidewalk or standing still facing a brick wall when Defendant Sheley apprehended him. These disputes are both material and genuine, and a

reasonable jury could conclude that the officers' actions were unreasonable under the circumstances.  Accordingly, the officers' motion for summary judgment on the unlawful detention claim is denied.

II.     Plaintiff's 42 U.S.C. Section 1983 Claim for Excessive Police Force.

Plaintiff argues that Defendants Hall and Sheley used unlawful excessive force in violation of the Fourth Amendment, and that Plaintiff therefore is entitled to relief under 42 U.S.C. Section 1983.  Defendants, in response, claim that qualified immunity protects them from Plaintiff's excessive force claim.

A.     Constitutional Violation.

To determine whether Plaintiff has satisfied the first part of his qualified immunity burden by establishing a constitutional violation, the Court must look to the substantive law in effect at the time the conduct in question occurred.  *See Saucier v. Katz*, 533 U.S. 194, 199 (2001).  In *Graham v. Connor*, decided in 1989, the Supreme Court held that the use of excessive force during arrest violates a person's Fourth Amendment right against unreasonable search and seizure and that all excessive force claims should be analyzed under the reasonableness standard of the Fourth Amendment.  *See* 490 U.S. 386, 395 (1989).  The analysis set forth in *Graham* is still in effect today and therefore is the standard under which the Court must assess the officers' conduct. *See, e.g.*, *Saucier*, 533 U.S. at 202; *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).

The Fourth Amendment reasonableness inquiry is objective and heavily fact dependent. *See, e.g.*, *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995).  It also recognizes that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, . . . [and it] must embody

allowance for the fact that police officers are often forced to make split-second judgments . . .  in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396-97.  A court must pay careful attention to the totality of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest by flight.  *See id.* at 396 (citation omitted).

       1.   Use of Mace.

In evaluating the *Graham* factors, the Court must accept as true the facts alleged by Plaintiff, and determine whether Plaintiff has established an excessive force violation of the Fourth Amendment by Defendant Hall as a result of Defendant Hall's use of mace.  The first *Graham* factor, the severity of the crime, *see id.* at 396, weighs in favor of Plaintiff because Plaintiff was not suspected of committing a relatively severe crime at the time Defendant Hall used force upon Plaintiff.  The crimes of public affray and disorderly conduct are petty misdemeanors and the punishment for these crimes is six months imprisonment or less.  *See* N.M. Stat. Ann. §§ 30-20-1, 30-20-2, and 30-1-6(C).

The second *Graham* factor, whether the suspect poses an immediate threat, *cf. Graham*, 490 U.S. at 396, however, weighs in favor of Defendant Hall.  Under the facts as alleged by Plaintiff, Plaintiff and the other combatants posed a potential threat to Defendant Hall and the numerous other people on the sidewalk witnessing the fight.  A reasonable officer in Defendant Hall's position, forced to make a split-second judgment under the stressful and dangerous conditions presented that night, reasonably could have believed that a group of five fighting men, who had just left a drinking establishment at approximately 1:40 in the morning, posed a serious

threat.  Defendant Hall was the only officer on the scene at the time, and as the sole officer attempting to respond to five combatants, it was reasonable for him, even knowing that the shirtless men began the physical portion of the fight, to believe that the combatants posed a threat to the safety of himself and the numerous bystanders.

The third *Graham* factor, whether the suspect is attempting to flee the scene, *cf. id.* at 396, weighs in Plaintiff's favor.  Plaintiff was not resisting arrest by attempting to flee the scene when Defendant Hall responded by using mace.  Although this factor and the first factor weigh in favor of Plaintiff, the primary focus of the Court's reasonableness inquiry "must remain on whether the officer was in danger at the exact moment of the threat of force." *Medina*, 252 F.3d at 1132.  As described herein, Defendant Hall was the sole officer on the scene, responding to a volatile situation involving five combatants who presented a threat to himself and others.  Although Defendant Hall did not first issue a verbal command before dispensing the mace from his fogger, the law does not require officers to apply the least amount of force but rather to apply a reasonable amount of force.  *See id.* at 1131.  Because Defendant Hall acted reasonably under the circumstances, Plaintiff cannot satisfy the first part of his qualified immunity burden by establishing a Fourth Amendment violation.  Accordingly, Defendant Hall is entitled to qualified immunity on this excessive force claim.

### 2.    Use of Force to Apprehend and Handcuff Plaintiff.

The Court next must determine whether Plaintiff has established an excessive force violation of the Fourth Amendment based upon Defendant Sheley's used force to apprehend and handcuff Plaintiff and Defendants Sheley and Hall's decision to leave Plaintiff in handcuffs for twenty to thirty minutes.  Based upon the facts as alleged by Plaintiff, the first *Graham* factor

weighs in favor of Plaintiff because resisting or obstructing an officer (like the crimes of public affray and disorderly conduct) is not, relatively speaking, a severe crime. The crime of resisting or obstructing an officer is a misdemeanor, and a person convicted of this crime is subject to imprisonment for a term in excess of six months but less than one year. *See* N.M. Stat. Ann. § 30-1-6(B).

The second *Graham* factor, which must be the primary focus of the Court's reasonableness inquiry, *see Medina*, 252 F.3d at 1132, also weighs in favor of Plaintiff. On the facts alleged by Plaintiff, a reasonable officer would not conclude that at the time Defendant Sheley used force to apprehend Plaintiff, that Plaintiff posed an immediate threat to Defendant Sheley or the other bystandars. Plaintiff was not visibly armed, he had just been incapacitated by mace, he had his arm covering his eyes, and he was stopped in front of a brick wall facing the wall. Defendants concede that at the time Plaintiff had his arm covering his eyes, Plaintiff could not see. Plaintiff was not acting in an aggressive manner or taking an otherwise hostile stance. Plaintiff was not shouting aggressive or hostile words or exhibiting other combative behavior. Under these circumstances, a reasonable officer in Defendant Sheley's position would not have believed that at the time of Defendant Sheley's apprehension of Plaintiff, that Plaintiff posed an immediate threat to himself or others.

Likewise, on the facts alleged by Plaintiff, it also was unreasonable for Defendant Sheley to handcuff Plaintiff with a broken arm and for Defendants Sheley and Hall to leave Plaintiff in handcuffs, with a broken arm, sitting on a curb, for twenty to thirty minutes, without medical assistance. Defendants Sheley and Hall, through the argument of their counsel, and without providing any facts in support of their argument, maintain only that "officers should not be

-23-

required to take unnecessary risks in performing their duties," and that "[officers] are authorized

to take such steps as are reasonably necessary to protect their personal safety and to maintain the

status quo during the course of the stop."   Mem. In Supp. of Mot. for Summ. J. (citation

omitted).  For purposes of this motion, however, the Court must accept as true the facts as

alleged by Plaintiff, and those facts do not indicate that Plaintiff presented a danger or threat.

Without probable cause to believe that Plaintiff was committing any crime, and without any facts

demonstrating that the personal safety of Defendants or other bystanders was in jeopardy, this

Court cannot say that a reasonable officer would have placed Plaintiff in handcuffs, with a broken

arm, for twenty to thirty minutes, without medical attention.  *Compare Wright v. City of St.*

*Francis*, No. 02-3337, 2004 U.S. App. LEXIS 7630, *22 (10th Cir. Apr. 20, 2004) ("'a detention

conducted in connection with a search may be unreasonable if it is unnecessarily painful,

degrading, or prolonged'") (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994));

*Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) (denying qualified immunity to

officer where plaintiff alleged that officer knew plaintiff had an injured arm and nonetheless

handcuffed her despite the fact that the officer did not believe plaintiff presented a threat).

*Compare Morreale v. City of Cripple Creek*, No. 96-1220, 1997 U.S. App. LEXIS 12229, *16-

17 (10th Cir. May 27, 1997) (plaintiff did not state a constitutional violation for excessive force

where plaintiff alleged that officer aggravated a prior shoulder injury by handcuffing her because

plaintiff did not allege that the officer used force that was substantial or abusive, plaintiff did not

complain of shoulder pain while handcuffed, and officer took steps to assure that the handcuffs

were not too tight).

　　　　Under the third *Graham* factor, and on the facts as alleged by Plaintiff, a reasonable

officer would not conclude that Plaintiff was resisting arrest by attempting to flee the scene when Defendant Sheley used force to apprehend and handcuff him and when Defendants Sheley and Hall left Plaintiff in handcuffs, with a broken arm, for twenty to thirty minutes.  According to Plaintiff and another eye witness, Plaintiff was standing still and facing a brick wall when he was struck, apprehended, and handcuffed by Defendant Sheley.  Defendants also concede that Plaintiff could not see.  Based upon these facts, it is not reasonable to conclude that Plaintiff was resisting arrest.

The *Graham* factors weigh heavily in favor of Plaintiff.  Accordingly, on the facts as alleged by Plaintiff, Plaintiff has satisfied the first part of his burden in defeating Defendants' claim of qualified immunity.

B.    Clearly Established.

Because the Court has held that the facts as alleged by Plaintiff establish a constitutional violation, the Court must consider next whether the right violated was a clearly established right.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  Plaintiff has satisfied this burden by demonstrating that the right to be free from excessive police force is "clearly established" in the "more particularized sense" required by Supreme Court precedent.  *Cf. id.* at 202.  Specifically, the "contours of the right" to be free from excessive police force are "sufficiently clear that a reasonable off[icer]" would have "underst[ood] that what he [or she was] doing"--*e.g.*, using physical force sufficient to break a person's upper arm in four places against an unarmed and unthreatening individual, without probable cause, and leaving a person in handcuffs for twenty to thirty minutes knowing that the person has a broken arm--violates that right.  *See id.* (citation and internal quotations omitted).  It is a well-settled and long-standing principle that the use of force

-25-

on an unarmed and unthreatening suspect constitutes unreasonable excessive force under the Fourth Amendment. *Cf. id.* at 208 (considering as part of its "clearly established" analysis whether the law in question was long standing); *see also Hung v. Watford*, No. 01-3580, 2002 U.S. Dist. LEXIS 23064, *18-19 (E.D. Pa. Dec. 3, 2002) ("[i]t is apparent that an unprovoked grab, punch, kick and handcuffing of an individual who is not resisting arrest . . . , not fleeing the scene of a crime and not engaging in any threatening activity . . . was clearly established as a violation of a constitutional right at the time of the incident") (unpublished decision); *Wright v. City of St. Francis*, No. 02-3337, 2004 U.S. App. LEXIS 7630, *22 (10th Cir. Apr. 20, 2004) (detention may be unreasonable if it is unnecessarily painful, degrading, or prolonged); *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993) (plaintiff stated a constitutional violation where officer knew plaintiff had an injured arm and handcuffed her even though plaintiff did not pose a threat). Plaintiff therefore has satisfied both the first and second parts of his burden to overcome Defendants Sheley and Hall's assertion of qualified immunity. The Court denies the motion for summary judgment on the excessive force claim to the extent that claim is based upon Defendant Sheley's use of force in apprehending and handcuffing Plaintiff and Defendant Sheley and Hall's use of force in keeping Plaintiff in handcuffs with a broken arm for twenty to thirty minutes.

     C.    <u>Summary Judgment Burden</u>.

     Because Plaintiff successfully has alleged facts that demonstrate a violation of a clearly established right, Defendants Sheley and Hall must assume the normal summary judgment burden of establishing that there is no genuine issue of material fact in dispute. *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied sub nom. Woodard v. Seghetti*, 509 U.S. 923 (1993). As previously described herein, the parties

-26-

dispute whether Plaintiff was running down the sidewalk or standing still in front of a brick wall when Defendant Sheley used force to apprehend and handcuff him.  The parties also dispute whether Defendants Hall and Sheley provided Plaintiff with medical attention. These disputes are both material and genuine, and a reasonable jury could conclude that Defendant Sheley's actions in apprehending and handcuffing Plaintiff, and Defendants Sheley and Hall's actions in keeping Plaintiff in handcuffs with a broken arm for twenty to thirty minutes, were unreasonable under the circumstances.  Accordingly, the Court denies Defendants Sheley and Hall's motion for summary judgment on the grounds of qualified immunity.

III.    Plaintiff's State Tort Claims.

In addition to bringing federal claims against Defendants Sheley and Hall, Plaintiff also brings assault, battery, false arrest, and negligent supervision claims against Defendants under the New Mexico Tort Claims Act.  Defendants maintain that the Court should dismiss Plaintiff's assault claim for failure to state a claim and Plaintiff's claims for assault, battery, and false arrest because Defendants were acting reasonably and in good faith.  Defendants also argue that the Court should dismiss Plaintiff's negligent supervision claim against Defendants Hall and the City of Albuquerque because Defendant Sheley did not commit the torts of assault, battery, or false arrest.

A.    Assault.

Defendants argue that Plaintiff cannot establish facts that demonstrate as a matter of law that Defendants Hall or Sheley committed an assault upon him because Plaintiff cannot demonstrate that he suffered an "'act, threat or menacing conduct'" that "'cause[d him] to reasonably believe that he [was] in danger of receiving an immediate battery.'"  Mem. in Supp. of

-27-

Mot. for Summ. J. at 14 (quoting *Baca v. Velaz*, 114 N.M. 13, 833 P.2d 1194 (N.M. Ct.  App.,

1992)).  Defendants maintain that Plaintiff was engaged in a fight prior to the time Defendant Hall

sprayed him with mace, and that he could not see and had his arm over his eyes when he was

apprehended by Defendant Sheley.  *See id.* at 15.  Defendants therefore conclude that Plaintiff

cannot establish as a matter of law that he reasonably believed he was in danger of receiving an

immediate battery from Defendants Hall or Sheley.  *See id.*  Plaintiff, in response, claims that the

facts demonstrate that he was in fear of receiving an immediate battery.  Specifically, Plaintiff

argues that he retreated after Defendant Hall sprayed him with mace to avoid further injury from

Defendant Hall.  Plaintiff also maintains that he tried to avoid being further battered by Defendant

Sheley when he alerted Defendant Sheley to the fact that Defendant Sheley had broken his arm.

The evidence does not indicate that Plaintiff retreated from the pepper spray because he

was in danger of receiving a battery.  Rather, Plaintiff testified in his deposition that he retreated

instinctually from the spray.  In addition, there is no evidence in the record that Plaintiff informed

Defendant Sheley that he had a broken arm because he was in danger of receiving an immediate

battery.  Rather, the evidence indicates that Plaintiff wished to receive medical treatment for his

broken arm.  Because Plaintiff does not point to any facts in the record demonstrating a genuine

issue for trial, and because on the facts in the record Defendants as a matter of law have

demonstrated that Plaintiff was not in danger of receiving an immediate battery, the Court grants

Defendants' motion for summary judgment on Plaintiff's assault claim.

B.    <u>Battery</u>.

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's

battery claim because Defendants used a reasonable amount of force and acted in good faith.  The

New Mexico Supreme Court held in *Mead v. O'Connor*, 66 N.M. 170, 173, 344 P.2d 478, 479 (N.M. 1959), that an officer is entitled to use such force as is reasonably necessary under all the circumstances of the case.  Officers, within these reasonable limits, "are the judges of the force necessary to enable them to make arrests or to preserve the peace.  When acting in good faith, the courts will afford them the utmost protection."  *Id.* at 173, 344 P.3d at 480.  Under New Mexico law, then, an officer may defend against a charge of battery by demonstrating (1) the officer used no more force than reasonably was necessary, and (2) the officer acted in good faith.  *See id.* at 173, 344 P.3d at 479-80; *compare Faubion v. Tucker*, 58 N.M. 303, 306, 270 P.2d 713, 715 (N.M. 1954) (stating in a civil case not involving a police officer that "to justify [a] . . . battery . . . on the ground of self-defense, the person assaulted must have done some overt act or made a hostile demonstration of a character to give the assailant reasonable ground to suppose himself in imminent danger" and that the defending individual may "only [use] such force . . . as a reasonably prudent [person] under the circumstances would believe necessary to repel the assault."); *State v. Gonzales*, 97 N.M. 607, 610, 642 P.2d 210, 213 (N.M. Ct. App. 1982) (referring to the *Mead* standard in a criminal case).

Defendants Hall and the City of Albuquerque argue that Defendant Hall  "only used such force as was reasonably necessary to stop the fight," and that he "acted in good faith when he maced Plaintiff . . . because he was attempting to stop the fight."  For the reasons described above, *see supra* Section II.A.1, even on the facts alleged by Plaintiff, Defendant Hall used no more force than reasonably necessary when he dispensed mace from his fogger in attempt to stop the fight.  Based on the facts alleged by Plaintiff, Defendant Hall acted in good faith.  Accordingly, Defendant Hall has demonstrated that he is entitled to judgment in his favor as a

matter of law on Plaintiff's battery claim.

Defendants Sheley and the City of Albuquerque also argue that Defendant Sheley "only used such force as was reasonably necessary to . . . stop a fleeing suspect," and that he "acted in good faith when he apprehended Plaintiff to prevent him from fleeing the scene."  The Court cannot grant summary judgment on this claim, however, because Defendants have not fulfilled their summary judgment burden by demonstrating that there is no genuine issue as to any material fact.  Specifically, as described herein, *see supra* Section II.C, the parties dispute whether Plaintiff was running down the sidewalk or standing still in front of a brick wall with his arm covering his eyes and unable to see when Defendant Sheley used force to apprehend and handcuff him.  In addition, the parties dispute whether Defendants provided Plaintiff with medical assistance for his broken arm.  If the Court were to accept the facts as alleged by Plaintiff as true, the Court cannot say that Defendant Sheley is entitled to judgment as a matter of law.  A reasonable jury could find, on the facts alleged by Plaintiff, that Defendant Sheley's actions in using force to apprehend and handcuff Plaintiff were unreasonable under the circumstances and that Defendant Sheley acted in bad faith by leaving Plaintiff in handcuffs knowing he had a broken arm and by refusing to provide Plaintiff with medical assistance.  Accordingly, Defendants Sheley and the City of Albuquerque are not entitled to summary judgment on Plaintiff's battery claim.

C.    False Arrest.

Defendants likewise claim that they are entitled to summary judgment on Plaintiff's false arrest claim against Defendants Hall, Sheley, and the City of Albuquerque "because [Plaintiff] was never arrested and Sgt. Hall and Officer Sheley had reasonable suspicion to detain him."  Under New Mexico law, "a determination of whether [an] officer . . . ma[kes] an illegal de facto arrest,

-30-

or simply conduct[s] a permissible detention, ultimately depends on whether his [or her] actions were reasonable under Fourth Amendment standards." *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (N.M. 1994) (citations omitted). "[R]easonableness in this context requires the balancing of legitimate law enforcement interests against a defendant's privacy rights." *Id.* (citations omitted). "A bright line test does not exist to evaluate whether an investigatory seizure is invasive enough to constitute an arrest requiring probable cause. Instead, [courts must be] guided by 'common sense and ordinary human experience.'" *Id.* at 317-18, 871 P.2d at 973-74 (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985)).

On the facts before the Court, Defendants placed Plaintiff in handcuffs for twenty to thirty minutes, even though Plaintiff had a broken arm. The scope of this stop exceeded that of an investigative detention, rendering it a *de facto* arrest requiring probable cause. *See id.* at 318, 871 P.2d 974 (scope of detention exceeded *Terry* stop and amounted to *de facto* arrest where police placed suspect in back of a locked police car for at least 45 minutes). A reasonable person in Plaintiff's position, handcuffed by police officers, would have felt deprived of his freedom in a significant way. *See id.*

The Court must balance this significant intrusion against the government's justification for the intrusion. There is no evidence in the record, however, that Defendants feared for their safety or the safety of those around them. Neither Defendants Hall nor Sheley had reason to believe that Plaintiff had a gun or other weapon or that Plaintiff was violent. Accordingly, the intrusion on Plaintiff's rights outweighs any legitimate government interests. For these reasons, the Court rejects Defendants' argument that Defendants did not conduct a *de facto* arrest of Plaintiff.

Having found that Plaintiff was in fact placed under *de facto* arrest, the Court next must

determine whether any genuine dispute exists as to a material fact and, if not, whether Defendants are entitled to judgment as a matter of law.  Good faith and reasonable belief in the lawfulness of police action--*i.e.*, belief that the police had probable cause to conduct the arrest--are defenses to a false arrest claim.  *See Perea v. Stout*, 94 N.M. 595, 600, 613 P.2d 1034, 1039 (N.M. Ct. App. ) (citing *Steinbaugh v. Payless Drug Store, Inc.*, 75 N.M. 118, 401 P.2d 104 (N.M. 1965)), *cert. denied*, 449 U.S. 1035 (1980).  The parties dispute genuine issues of material fact relevant to the questions of good faith and probable cause.  Specifically, the parties dispute whether Defendant Hall had knowledge of who the aggressors were that night, whether Plaintiff heard Defendant Hall order the combatants to get on the ground, and whether Plaintiff was running down the sidewalk or standing still facing a brick wall when Defendant Sheley apprehended him.  Even if the Court were to accept Plaintiff's facts as true, this Court could not find on those facts that Defendants had probable cause to arrest Plaintiff.  *See supra* Section I.A.  Accordingly, Defendants are not entitled to judgment in their favor as a matter of law on Plaintiff's false arrest claim.

   D. <u>Negligent Supervision</u>.

   Defendants argue in their opening memorandum that they are entitled to summary judgment on Plaintiff's negligent supervision claim against Defendants Hall and the City of Albuquerque because Defendant Sheley did not commit the alleged torts of assault, battery, or false arrest.  In their reply, Defendants argue that even if the Court cannot determine as a matter of law that Defendant Sheley did not commit one or more these torts, Defendants are entitled to summary judgment on the negligent supervision claim because Plaintiff failed to satisfy his summary judgment burden.

   The Court already has held that Defendant Sheley is not entitled to summary judgment on

Plaintiff's state tort claims of battery and false arrest. Therefore, Defendants' first argument does not have merit. The Court therefore turns to Defendants' second argument that Plaintiff has not satisfied his summary judgment burden.

When a moving party makes a motion for summary judgment, it must satisfy its initial summary judgment burden of showing that there is an absence of evidence to support the nonmoving party's case. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) (citation omitted). Once a moving party satisfies this burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings. Rather, in response, the adverse party must go beyond the pleadings by designating specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). In satisfying its burden, the nonmoving party cannot rely upon the argument of counsel. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988).

Here, Defendants argue in their reply brief that Plaintiff has provided "no evidence that Sgt. Hall was negligent in his supervision" of Defendant Sheley, and that Defendants' motion for summary judgment on the negligent supervision claim should be granted. Plaintiff, however, was not required to come forward with specific facts showing that there is a genuine issue for trial on this ground because Defendants failed to satisfy their initial summary judgment burden of showing that there is an absence of evidence to support Plaintiff's case. *See Allen*, 119 F.3d at 840. In their opening brief, Defendants argue only that they are entitled to summary judgment on the negligent supervision claim because Defendant Sheley did not commit the underlying torts of assault, battery, and false arrest. Defendants do not argue that there is an absence of evidence to

-33-

demonstrate that Defendant Hall acted negligently in his role as Defendant Sheley's supervisor.[4] Because Defendants have not satisfied their initial summary judgment burden, the Court must deny Defendant's motion for summary judgment on the negligent supervision claim.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendants Keith L. Sheley, Steven Hall, and the City of Albuquerque's Motion for Summary Judgment, filed November 30, 2004 **[Doc. No. 50]**, is hereby **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Defendant Hall's motion in his individual capacity for summary judgment on Plaintiff's 42 U.S.C. Section 1983 claim is granted to the extent that claim is based upon Defendant Hall's use of mace; and

2.      Defendants Hall, Sheley, and the City of Albuquerque's motion for summary judgment on Plaintiff's assault claim is granted.

**IT FURTHER IS ORDERED** that the remainder of Defendants' motion for summary judgment is **DENIED**.


Dated this 13th day of May 2005.


JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

---

[4] Defendants make this argument for the first time in their reply brief.

-34-

<u>Attorneys for Plaintiff</u>:

      Adam S. Baker, Esq.

<u>Attorneys for Defendants</u>:

      Kathryn Levy, Deputy City Attorney
      Catherine D. Arlowe, City Attorney